**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIDGETTE TONI,** | : | **Civil Action No.** 26-3084 |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **ARAMSCO, INC.,** | : | |
| **Defendant.** | : | |

### CIVIL ACTION

Plaintiff, Bridgette Toni (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Aramsco, Inc. (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing in Philadelphia, PA.

3. Upon information and belief, Defendant Aramsco, Inc. is a provider of supplies and services of specialty contractors with a location and corporate headquarters located at Five Radnor Corporate Center, 100 Matsonford Road, Suite 510, Radnor, PA 19087.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and

employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§

1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under Title VII and the PHRA.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), digitally signed on September 9, 2025, alleging race discrimination and retaliation against Defendant.

14. The Charge was assigned a Charge Number 530-2025-09730 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated February 5, 2026.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims and within two years of receipt of the Right to Sue in this matter with respect to her PHRA claims.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff is African American.

3

21. On or about August 12, 2024, Defendant hired Plaintiff in the position of Accounts Payable ("AP") Coordinator.

22. Plaintiff was well qualified for her position and performed well.

**PLAINTIFF WAS THE ONLY AFRICAN AMERICAN IN HER POSITION**

23. At the time of her hire, Plaintiff worked under JoAnne McKee (Caucasian female), AP Manager, who was located in the New Jersey office.

24. Defendant employed approximately five (5) other AP Coordinators, including, but not limited to, Tracy Crouse, Marlene Howells, Lenora Cuccinello and Ashley Tarrant, all of whom were Caucasian.

**DEFENDANT ANNOUNCED A NEW AP MANAGER WOULD REPLACE MCKEE**

25. In or about late August 2024, Defendant announced that McKee was transferring to the Finance Department and that a new AP Manager would be hired to supervise Plaintiff.

**THE NEW AP MANAGER REFUSED TO SPEAK WITH PLAINTIFF FOR THE FIRST FOUR (4) MONTHS OF HER EMPLOYMENT UNDER HIS SUPERVISION**

26. Shortly thereafter, Defendant hired Jonathan Williams (Caucasian male) as the new AP Manager.

27. From the outset, Williams demonstrated hostility toward Plaintiff.

28. He refused to speak to her for the first four (4) months of her employment under his supervision, and Plaintiff was forced to initiate communication with him.

**MCKEE TRAINED WILLIAMS AND PLAINTIFF, BUT WILLIAMS RECEIVED PRIORITY ATTENTION**

29. While McKee trained both Williams and Plaintiff, Williams received priority attention.

4

## WILLIAMS AVOIDED ENGAGING WITH PLAINTIFF AND BECAME FRUSTRATED WITH HER WHEN SHE ASKED QUESTIONS

30. In January 2025, Plaintiff requested assignments and was finally given vendor accounts A-D.

31. She independently developed her own task list and strategy to manage the workload.

32. Despite her efforts, Williams continued to avoid engaging with her and expressed frustration when she asked questions.

33. When Plaintiff sought assistance from other AP Coordinators, they redirected her back to Williams, who refused to provide guidance.

## WILLIAMS ISSUED PLAINTIFF A "SATISFACTORY" RATING ON HER PERFORMANCE EVALUATION

34. In March 2025, Plaintiff did not receive a performance evaluation and followed up with Williams.

35. He gave Plaintiff a "Satisfactory" rating.

36. Seeking clarity and improvement, Plaintiff requested a one-on-one meeting with him.

## WILLIAMS ISSUED PLAINTIFF A PERFORMANCE IMPROVEMENT PLAN

37. At their April 2025 meeting, instead of offering constructive feedback, Williams issued Plaintiff a Performance Improvement Plan ("PIP").

38. Williams admitted that he was giving it to "everyone", but had failed to provide prior warnings or outline any actual plan for improvement during their weekly meetings.

## PLAINTIFF COMPLAINED OF RACE DISCRIMINATION TO MCKEE, BUT HER COMPLAINT WAS NOT ADDRESSED

39. Plaintiff raised her concerns to McKee, including that she believed that she was being treated poorly because of her race.

40. McKee dismissed her concerns, stating that she did not think race was the reason.

## WILLIAMS DENIED PLAINTIFF'S REQUEST TO WORK REMOTELY WHILE HER CAR WAS BEING REPAIRED

41. Shortly thereafter, Plaintiff requested permission to work remotely while her car was being repaired.

42. Williams denied her request, stating that because she was on a PIP, she had to report in person.

## PLAINTIFF COMPLETED THE PIP, BUT WILLIAMS CONTINUED TO SUBJECT PLAINTIFF TO DISPARATE TREATMENT

43. Plaintiff nevertheless successfully completed the PIP without issues.

44. However, Williams continued to subject Plaintiff to disparate treatment based on her race.

45. Williams placed invoices in Plaintiff's inbox when other AP Coordinators were absent, creating a false impression that she was not completing her own work.

46. He further restricted her to three (3) hours of overtime, while simultaneously pressuring her by email to work four (4) to five (5) hours of overtime.

47. If Plaintiff did not perform the additional work, he accused her of underperformance.

## DEFENDANT TERMINATED PLAINTIFF

48. On or about July 22, 2025, Williams called Plaintiff into his office and abruptly terminated her employment for allegedly "not meeting expectations."

49. At all times, Plaintiff performed her job duties competently.

50. Defendant's stated reasons for her termination are pretextual.

51. Plaintiff was treated less favorably than her Caucasian peers, subjected to heightened scrutiny, denied support and flexibility, and ultimately terminated because of her race.

6

52. Defendant discriminated against Plaintiff due to her race and retaliated against her for complaining about race discrimination in violation of Title VII and the PHRA.

53. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – RACE DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

54. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

55. Plaintiff is a member of protected classes in that she is African American.

56. Plaintiff was qualified to perform the job for which she was hired.

57. Plaintiff suffered adverse job actions, including, but not limited to termination.

58. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

59. Circumstances exist related to the above-cited adverse employment actions that give rise to an inference of discrimination.

60. Defendant discriminated against Plaintiff on the basis of race.

61. No legitimate, non-discriminatory reasons exist for the above-cited adverse employment actions that Plaintiff suffered.

62. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

63. Defendant willfully violated, or violated due to gross recklessness, Plaintiff's federal statutorily-protected rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – RACE DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

64. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

65. The foregoing conduct by Defendant's constitutes unlawful discrimination against Plaintiff on the basis of her race (African American).

66. As a result of Defendant's unlawful race discrimination, Plaintiff has suffered damages as set forth herein.

    **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RETALIATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

67. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

68. Plaintiff engaged in protected activity protected by Title VII when she complained about race discrimination.

69. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

70. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

71. Defendant willfully violated, or violated due to gross recklessness, Plaintiff's federal statutorily-protected rights.

    **WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

72. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

8

73. Plaintiff engaged in activity protected by the PHRA when she complained about race discrimination.

74. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

75. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Bridgette Toni, requests that the Court grant her the following relief against Defendant:

(a)    Damages for past and future wage loss;

(b)    Punitive damages;

(c)    Compensatory damages for mental anguish/emotional distress;

(d)    Reasonable attorneys' fees;

(e)    Recoverable costs;

(f)    Pre and post judgment interest;

(g)    An allowance to compensate for negative tax consequences;

(h)    A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII and the PHRA.

(i)    Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training  programs, policies, practices and programs which provide equal employment opportunities;

(j)    Order Defendant to remove and expunge, or to cause to be removed and expunged,

9

all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(k)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC

Date: May 6, 2026          **By:**  */s/David M. Koller*
David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

10